UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PERLA VIANEY MARTINEZ NUNEZ,

    Petitioner,

vs.                Case No. 8:05-CV-1865-T-27EAJ

EDGARDO RAFAEL HERNANDEZ
MAGANA,

    Respondent.
_____/

## ORDER ON PETITION FOR RETURN OF CHILD TO PETITIONER

**BEFORE THE COURT** is Petitioner's Petition for Return of Child to Petitioner (Dkt. 1), filed pursuant to the Convention on the Civil Aspects of International Child Abduction, known as the "Hague Convention" or "Convention." The Convention is codified in the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610. This Court has subject matter jurisdiction pursuant to ICARA, 42 U.S.C. § 11603. The petition is timely.

By these proceedings, Petitioner seeks the return of her eight year old son, J.R.M.H. to Mexico, alleging in her petition that J.R.M.H. was wrongfully detained in the United States in January 2005 by her husband, Respondent Edgardo Rafael Hernandez Magana, J.R.M.H's father. Petitioner, a citizen and resident of Mexico, resides with her minor daughter at Boulevard de la Paz, #101, Apartment #1, Oaxaca, Oaxaca, Mexico. Tel# 951-507-0493. Respondent, also a citizen of Mexico resides at 934 Delaney Circle, Brandon, Florida 33511, U.S.A. Tel # 813-571-1103.

*Background and Procedural Posture*

In accordance with the mandate in Article 11 of the Convention providing for the expeditious

resolution of proceedings brought pursuant to its provisions, this Court conducted an evidentiary hearing on the Petition on October 19, 2005 through October 21, 2005. Petitioner appeared with counsel and Respondent appeared with the child and counsel. The Court received testimony from Petitioner and Respondent and admitted into evidence exhibits submitted by both parties. At the request of Respondent, pursuant to Article B of the Convention, the Court received unsworn testimony from the minor child in chambers, outside the presence of his parents but in the presence of the parties' respective attorneys.

## *Hague Convention, as Implemented by 42 U.S.C. § 11601-11610, International Child Abduction Remedies Act*

The purpose of the Convention is to protect children internationally from the harmful effects of their wrongful removal or retention and to establish legal rights and procedures to return children who have been wrongfully removed or retained from their country of habitual residence. See Art. 1, Hague Convention; 42 U.S.C. § 11601; Journe v. Journe, 911 F.Supp. 43 (D.P.R. 1995); Currier v. Currier, 845 F.Supp. 916, 920 (D.N.H. 1994). Mexico and the United States are signatories to the Convention.

The object of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Article 1. Lops v. Lops, 140 F.3d 927, 935 (11th Cir. 1998). The United States Congress, in its findings incidental to implementation of the Hague Convention into United States law, found that "persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention" and that "children who are wrongfully removed... are to be promptly returned

unless one of the narrow exceptions set forth in the Convention applies." 42 U.S.C. §§ 11601(a)(2), (4).

Under the Convention, a child is considered wrongfully removed where removal ". . . is in breach of rights of custody attributed to a person . . . under the law of the state in which the child was habitually resident immediately before the removal . . . and . . . at the time of removal . . . those rights were actually exercised, either jointly or alone or would have been so exercised but for the removal . . ." Hague Convention, Article 3. Lops, 140 F. 3d at 935. Pursuant to Article 11 of the Convention, "the judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children."

Finally, this Court has jurisdiction in this ICARA case only to decide the merits of the wrongful removal claim, not the underlying custody dispute. Lops, 140 F.3d at 936; 42 U.S.C. § 11601(b)(4). Consistent with the purposes of the Convention, the United States Congress declared:

> The Convention and this chapter empower courts in the United States
> to determine only rights under the Convention and not the merits of
> any underlying child custody claims.

42 U.S.C. § 11601(b)(4).

### *Burdens of Proof*

A person seeking the return of a child may commence a civil action by filing a petition in the Court where the child is located. The petitioner bears the burden of establishing by a preponderance of the evidence that the child was wrongfully removed under the law of the state in which the child was habitually resident immediately before the child's removal, pursuant to Article 3 of the Convention. 42 U.S.C. § 11603(b).

### *Factual Findings*

Petitioner and Respondent are married and citizens of Mexico. They have two minor children, both of whom were born in Mexico. Only the minor son of the parties is the subject of these proceedings, the minor daughter having returned to Mexico with Petitioner in January 2005. In 2003, the parties and their children were residing in Oaxaca, Oaxaca, Mexico. Until July 2003, J.R.M.H. had resided in Mexico his entire life. In June, Respondent took a job in and moved to the United States, specifically Brandon, Florida. In July, Petitioner, accompanied by their minor children, moved to to the United States and took up residence with Respondent. According to Petitioner, she moved to the United States "to see what life was like there" and did not intend to make it her home. She left the family's furniture, her belongings and the children's belongings in the family home in Oaxaca. Notwithstanding, the children were enrolled in school in Brandon.

The parties began to experience marital difficulties. In October, Petitioner returned to Mexico alone and stayed approximately one month, leaving the children with Respondent. She returned to Brandon with a draft marital settlement agreement, which had been drafted in Mexico by her attorney. In December 2003, the parties signed the marital settlement agreement. (Pet. Ex. 1,2). The agreement, which Respondent contends he did not believe to be enforceable, provides for Petitioner to have custody of the children, that she and the children would reside in Mexico, that Respondent would pay child support and Respondent would have liberal visitation.

Petitioner and the children returned to Oaxaca in December 2003 to live. They were enrolled in school there and remained in Mexico until the Spring of 2004, when Petitioner and the children returned to Brandon to visit Respondent. The children stayed with Respondent approximately three weeks. The children then returned to Oaxaca. In June, they returned alone to Brandon to visit

Respondent and stayed through August 2004. Petitioner flew to the United States and returned with the children to Oaxaca.

On December 19, 2004, the children again visited with Respondent in Brandon for the holiday season. Round trip airline tickets had been purchased for them and they were scheduled to return to Mexico the first week of January 2005, according to Petitioner. When they did not return as scheduled, Petitioner attempted unsuccessfully to reach Respondent and learned through her father that Respondent did not intend to allow the children to return to Mexico. Petitioner then traveled to the United States and with the assistance of the Mexican Consulate, located the children and met with Respondent. The testimony of the parties conflicts as to what then occurred. Material to this case, however, is that there was a contentious disagreement between the parties. Petitioner returned to Mexico with her daughter and her son remained in Brandon with his father. J.R.M.H. has remained in the United States since that time.

On January 31, 2005, Respondent commenced a child custody proceeding in Oaxaca.(Resp. Ex. 2). Shortly thereafter, Petitioner commenced a similar proceeding in Oaxaca. (Pet. Ex. G). There are at present, therefore, two child custody proceedings pending before the family court in Oaxaca. No such proceeding has been commenced in the United States.

The testimony of the parties predictably conflicted as to whether the children were to remain in the United States. Petitioner testified that Respondent detains J.R.M.H. in the United States over her objection and contrary to the parties' marital settlement agreement. She testified that she never agreed that J.R.M.H would live permanently in the United States. Respondent testified that the family had moved to the United States in July 2003 with the intent to remain there as a family, incident to his new employment. He testified that Petitioner returned with the children to Mexico

unexpectedly in December 2003. He acknowledges, however, that the children visited with him in the Spring and Summer of 2004, and that he let them return to Mexico after each visit to live with Petitioner. He explains that he signed the marital settlement agreement to simply end the discussions with Petitioner and had been advised that it had no legal effect.

Respondent described Petitioner as continuously complaining of the difficulties in caring for the children in Mexico. He learned that she had left the children alone several times in Mexico. He testified that he and Petitioner discussed whether the children would live in the United States or Mexico many time and that they agreed that the children would come to the United States in December 2004 to stay. He accordingly enrolled them in school in Brandon for the next term. Respondent testified that Petitioner then changed her mind. He testified that neither child wanted to return to Mexico with Petitioner and that they both became physically ill when their mother appeared in January 2005 attempting to return them to Mexico.

### *Habitual Residence*

J.R.M.H. was born in Puebla City, Puebla Mexico and resided there until July 2003, when his family moved to the United States incident to his father's new employment. Immediately prior to that time, he lived in Oaxaca with his family and attended school there. Other than the ensuing four months between July and December 2003, when he lived in Brandon with his family, he had been a continuous resident of Mexico. In December 2003, pursuant to the marital settlement agreement signed by his parents, he returned to Mexico and lived and went to school there, as intended by his parents. He was, therefore, undisputedly an habitual resident of Mexico immediately before his father determined to keep him in the United States in January 2005. His visits to the United States in the Spring and Summer of 2004 were undisputedly for visitation purposes only and

not evidence of an intent by his parents that he remain in the United States. His visit during December 2004 was likewise for visitation purposes and does not evidence an intent that he remain in the United States permanently.

Troubling in this case is that J.R.M.H advises this Court that he does not wish to return to his home in Oaxaca. Although only eight years of age, he is intelligent and mature beyond his tender years, a credit to both of his parents. He understands that his parents have a disagreement, and that the courts have been asked to resolve that disagreement. However, he is clearly traumatized by the parental conflict he has witnessed and genuinely desires to stay in the United States, where he enjoys school, has made friends and lives a comfortable and secure life, free from conflict. He misses his sister and his extended family but was adamant in his desire to stay in Brandon, Florida. Unfortunately, J.R.M.H.'s sincere desire cannot be determinative, given the evidence before the court. He is just too young, too impressionable and too troubled by parental conduct to be persuasive to the Court. A young child should not have to endure what his parents have forced him to endure by being unable to reach an amiable agreement which would make him happy, as he has the right to be.

### *Wrongful Retention*

Petitioner has established by the preponderance of the evidence that Respondent wrongfully retained J.R.M.H in the United States on January 6, 2005, in violation of Petitioner's rights of custody under Mexican law. The detention is inconsistent with the marital settlement agreement signed by the parties, notwithstanding the Respondent's contention that he did not think it to be legally enforceable. That both parents have commenced custody proceedings in Oaxaca further supports a conclusion that the parties intend that their dispute over J.R.M.H.'s custody be resolved

in J.R.M.H.'s habitual place of residence.

Under Article 5a of the Convention, "rights of custody" include "rights relating to the care of the person of the child, and, in particular, the right to determine the child's place of residence." Petitioner clearly was exercising and had the right to exercise 'rights of custody' within the meaning of that term, in the Convention. Moreover, under State of Oaxaca law, both parents enjoy custodial rights. (Pet. Ex. 8)

Courts define "exercising custody" broadly and find that a parent is exercising custody "whenever a parent with de jure custody rights keeps, or seeks to keep, any regular contact with his or her child." Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir. 1996). Notwithstanding the Petitioner's contentions, and even accepting as accurate that Petitioner complained of the difficulties in caring for her children in Mexico, no evidence was presented that Petitioner abandoned her right to exercise parental authority over J.R.M.H. Indeed, she has gone to extraordinary expense and effort to locate J.R.M.H. and to exercise her lawful rights under the Hague Convention.

*Conclusion*

Based on the evidence presented and applicable law, it is **ORDERED AND ADJUDGED:**

1. Petitioner's petition (Dkt. 1) is **GRANTED**, to the extent that Respondent shall return the minor child of the parties, J.R.M.H, to Oaxaca, State of Oaxaca, Mexico and submit to the jurisdiction of the family court there within thirty (30) days of the date of this Order, at Respondent's expense. The clerk is directed to return the passport of J.R.M.H to Respondent's counsel of record, upon counsel's certification that Respondent has purchased airline tickets for J.R.M.H and Respondent from the United States to Mexico. Counsel shall file with the Court a pleading identifying the dates and times of travel, the name of the airline, and departure and arrival

information. Counsel's certification that Respondent has complied with this order shall be filed after Respondent has complied with this order..

3.  Jurisdiction is reserved to impose undertakings and conditions for removal, if necessary to effect the terms hereof, and to award expenses and fees pursuant to 42 U.S.C. § 11607.

4.  The court is appreciative of the professionalism exhibited by counsel for the parties and their efforts on behalf of their respective clients as well as on behalf of J.R.M.H., whose best interests should be paramount.

**DONE AND ORDERED** in chambers this 25th day of October, 2005.

JAMES D. WHITTEMORE
United States District Judge

cc: Counsel of Record